Our next case is AXE, LEGGETT & PLATT This is a case of LEGGETT & PLATT When you're ready, Mr. Jossman. Good morning, your honors, and may it please the court. The appellants in this case, AXENT PACKAGING, were not allowed to take any depositions, serve any interrogatories, serve any requests for production, or given any evidence at all regarding the products that were actually sold to the customers of the defendant, LEGGETT & PLATT, in this case. Despite this, AXENT, at the very least, proved infringement as a matter of law with respect to one of the patents, and at the very least showed that there were questions of fact regarding the second patent. There are two patents at issue in this case. The first, the 877 patent, relates to a more efficient design for gripping, knotting, cutting, and ejecting the wire. It results in a product with fewer moving parts and results in fewer breakdowns. You second that patent claim using the word RESPECTIVE twice. Does that require four elements? I don't think so, your honor. RESPECTIVE is an open-ended term, not like DIFFERENT. The claim specifically doesn't use the term each of the elongated operator bodies associated with a different one of the gripper, knotter, cutter, and cover. For example, if you were to tell a room full of students, I expect all of you to attend your respective classes this afternoon, they could all be attending some of the same classes, they could be attending multiple classes. Yeah, but the language here, I mean, it says each, it says with the RESPECTIVE one, so as I understand your argument, so correct me if I'm wrong, because it said RESPECTIVE one as opposed to RESPECTIVE one and only one, they fail and you win. In other words, one only means one if you modify it with the phrase and only one. Is that your position? Well, really the term a RESPECTIVE forms the function of saying more than one. If you didn't include the language a RESPECTIVE one in this language, you would have languages that each of the operator bodies is associated with the gripper, knotter, cutting element, and cover. So potentially you'd have a requirement that each of them is associated with all four of those elements. One of essentially says that it only needs to be associated with one of them, and then a RESPECTIVE makes the term more open-ended and says that the elongated operator bodies are associated with whatever of the gripper. How does RESPECTIVE make one mean more than one? Because RESPECTIVE is an open-ended term which essentially says whatever it may be associated, the elongated operator bodies may be associated with. It's not a term like DIFFERENT that says it has to be associated with a different one of the gripper, knotter, cutter, or cover. It's a more open-ended term than DIFFERENT. Does it mean one of each? That you have to have at least one of each of the following? A gripper, knotter, cutting element, or cover? The claims as a whole require that the elongated operator bodies activate the gripper, knotter, cutter, and cover. There are additional limitations in the patent if you want to look at the record at A50. For instance, the last limitation says that there's the interacting elements of the elongated operator bodies, and the swinging of the operator bodies in the single direction affects the timed operation. Can you give me a column and a line? Sure, absolutely, Your Honor. A50, column 10, lines 54 to 56. The patent talks about wherein the swinging of the operator bodies in the single direction affects said timed operation. Said timed operation is defined further up in the specification as the activating of the gripper, the knotter, the cutter, and the cover. So what the claim as a whole is intended to say is, instead of these prior art devices that had different unreliable components in them, what we have is the elongated operator bodies which are performing all four steps of the claim when the torque tube, as it's called, swings in one direction and activates all four of its parts. I don't understand how that undermines the decision of the district court here. I mean, what the patent intended to say is, it's all well and good, but he's construing a claim. And I guess given the word used in the claim, you cite the Baldwin case. Well, the Baldwin case deals with A's and the's and whatever. Baldwin was quite clear, suggesting even that, you know, you've got to say one. You can't use A. You can't use the. Here they said one, and you're saying one isn't good enough. You have to say one and only one. If not, you don't get the benefit of the word one. Not necessarily, Your Honor. What I'm saying is the one of is saying that the elongated operator bodies have to be interacting with one of the gripper, knotter, the cutter, or the cover. A respective says that they could be associated with multiple of the gripper, knotter, cutter, and cover. If there's any doubt about the claim language itself, then you just need to look to the specification, which specifically talks about two of the elongated operator bodies that interact with both the knotter and the cover. The only way you get to the four elongated operator bodies that the court says are required is if you construe the claims as requiring the elongated operator bodies to interact with one and only one. Well, I understand your point there, and I think we'll ask the other counsel to explain that. That preferred embodiment on which you rely so heavily also has four elongated bodies, right? It does, but the teaching of the patent as a whole is that elongated operator bodies, instead of the unreliable components talked about in the Browse 554 patent, the spring-based pawls, the lost motion, and dwell, that was the point of all the amendments in this patent, is to describe it as using elongated operator bodies rather than these structures that were clearly not elongated operator bodies. You started off by mentioning the discovery issue. Correct. What did you do to utilize the normal methods of discovery? Was there interrogatory served? The court made it very clear early on in his early hearings that the parties were only going to be able to do the discovery that he allowed them to do. They did allow us to do an inspection of their device, but we were not allowed to do any other discovery. When the court set the case for motion... Are you saying that had you filed a motion for, or had you sought interrogatories, that the court would not have allowed that? We did actually seek discovery before the motion for summary judgment. Before the briefing was due, we did file a motion for discovery and saying specific 30B6 depositions that we wanted to have, another discovery that we wanted to have, and that was denied by the judge before we even had the summary judgment briefing due, which was essentially four months after the case was filed. And our standard of review on these questions is? And we feel that as early as this case was, that it really was an abuse of discretion not to be allowed any of the standard forms of discovery. And specifically, it would relate to the 992 patent, which is the second patent that's at issue here, which relates to the mounts for the cover, which the specific limitation at issue relates to the mounts being able to rotate through an arc of about 90 degrees. The only thing that Legate claims prevents their mounts from rotating through 90 degrees is a stop that's attached to the vise with two screws. Now, we presented evidence that this stop is removable. There are experts who talked about how these screws could be removed in a matter of seconds or a minute, and that the mounts for their cover would then be rotatable through to 90 degrees. And lest there be any doubt about the intent that this stop be removable, in the second patent application of Legate that the court has taken judicial notice of and they filed their server reply to discuss about, they specifically teach that this stop is removable. That is in figures 26 and 27 in paragraphs 92 and 100 of Legate's patent application, publication 2012-0012013. This is exactly the kind of evidence that we felt we could get if we were given additional discovery. Even without the additional discovery, we had the evidence of our expert, which indicated that one, the stop was removable, and when the stop was removed, as Legate has now indicated is intended to be removed, that the mounts could be easily rotated through 90 degrees. So where in the record do we find that the court denied you the ability to commit a discovery? I don't have that reference offhand, Your Honor, but it is in the record, I believe, and I can probably point that out to you on rebuttal during my rebuttal time. One point I would make with going back to the 877 patent is even if the court agrees with the court's construction, there's at the very least an issue of fact under the doctrine of equivalence. We submitted evidence from our expert explaining how the device at issue with its, they claim two, there really appears to be at least three elongated operator bodies, would at very least be the equivalent of an elongated, something with four elongated operator bodies. Essentially all they did was take the elongated operator body that operated the cutter and combine it with one of the elongated operator bodies that operated both the cover and the nodder. There's at very least an issue of fact as to whether that's equivalent to, even if you construe the claims to require four elongated operator bodies, whether there's equivalence there. The court has no further questions at this time. I'll reserve the rest for rebuttal. Thank you. Thank you, Your Honor. Good morning. May it please the court. Sometimes I have some qualms when I see a very brief truncated claim construction, but I have additional qualms when it contains a very overt error. And in this case it's just very clear that each arm doesn't perform one function, does it? The second and the third arms, we know for a fact, both twist the knot and remove the cover. Two functions performed by two arms together, that's not one arm each performing a separate function. So the district court's made a flat out error in a two paragraph claim construction. Shouldn't we start this over again? No, Your Honor. The district court's statement, and I want to make sure I'm tracking your focus. I'm worried about this. Each arm performs one function, which is wrong. The district court stated, Your Honor, that an ordinary reading of the claim language assigns the machine's four arms a single function. And we believe that an ordinary reading of the claim language, giving meaning to the words each and the phrase a respective one, is correct. You think he's correct? You said that if a claim construction reads out the preferred embodiment, it can almost never be correct. Is this an instance where you read out the preferred embodiment and it's correct? No, Your Honor. Our position has been, and the district court adopted our position, that there needed to be, according to the plain language of the claims, as informed by the sole embodiment in the specification. It identifies four elements. It doesn't say those elements perform separate individual functions non-overlapping, does it? It does not. Then the district court made a flat out error. And why wouldn't that error have permeated the rest, which he then says, well, because you have four individual functions, you've got to have four separate arms. And in fact, this case looks an awful lot like Gillette, where they just combined two elements into one, right? Mapped two into one and said, well, that's an error when it turned out that this court said it was not. Again, I think what the judge was doing, to the extent you're giving deference to the judge's claim construction… This is claim construction. We're not giving any difference. Go ahead. Then the analysis is, look at the plain language of the claim. Each operator body being coupled to a respective one of the gripper, the nodder, the cutter, and the cover. And the preferred embodiment does not represent that, right? The preferred embodiment actually does represent that. Really? Well, the preferred embodiment, let me be clear. I've read the brief. Okay, you say the preferred embodiment because it says four. But that's less than relevant when we're talking about whether or not each of these bodies is coupled to both the nodder and the cover. And that's clearly what's going on with the preferred embodiment, right? You're correct. Preferred embodiment says four. The claims do not expressly say four. Claims are very broad, aren't they? I'm sorry? Your Honor, the claims are very broad. They're just identifying different categories. Covers, cutters, nodders. I don't believe they are broad. I think they are claiming four functions. They could have claimed two functions. They could have claimed seven functions. They chose to claim four functions. But they didn't claim four arms, did they? I believe they did, Your Honor. I believe they claimed… Because you're saying that each of the arms performs one of the functions. Back to the preferred embodiment where the arms perform two of the functions. Two of the arms perform two of the functions. Is that not inconsistent with the claim construction? It is not inconsistent with the claim construction requiring at least four arms extending from the shaft. You are correct. In the sole embodiment, there is an arm, a single arm that is dedicated to the gripper function. On the other end, there is a single arm that is dedicated to the cover function. I'm sorry, to the cutting function. Right. And in between, there are two arms that are both required to perform the nodder and the cover. Thank you. Of those two arms, each of those two arms is performing two of those, not one of those. How can you say that's not inconsistent with the claim construction that you're advocating here? We are advocating a claim construction that requires four arms extending from the shaft. But if you only get to four arms because you say you're construing the claim to say respective each of those means that you've got four of those functions and that leads you backwards to saying you've got four bodies. If the preferred embodiment undermines that view because you've got bodies performing more than one function, I mean, am I not explaining my question or are you getting my question and just disagreeing? No, no, I'm getting your question. Let me try it this way. The specification makes it clear that a single arm by itself does not perform more than one function. A single arm by itself does not perform more than one function. What do you mean by itself? But when it's with other arms, it does? The two arms in the middle. So are you asking us to construe the claim differently then with that modification? That if you have a single arm, it performs each of those, but if you have more than one arm, I don't understand. No, I'm asking you to construe the claim to require at least four arms extending from the shaft that correspond to the four claimed functional elements. But you're asking us to do that, to say there are only four because you're asking us to construe the language each of to mean we know there are only four because there are four functions. That takes us back to the four arms. What I'm suggesting is that the preferred embodiment has two of the bodies performing more than one function, which undermines how you get to where you want to go in terms of four based on the claimed language. Does it not? No, Your Honor. I don't believe it does. But when we look at figure seven of the patent, when we look at bodies 220 and 222, it's clear that those two bodies perform more than one function. Together they do. Yes, Your Honor. I guess where the disconnect might be. Together they do. Each of them separately performs two functions. Each of them separately cannot perform the two functions. It refers to them specifically in the specification as a pair of mating, knotter, and cover operators. It makes it clear that both of them are required to perform the twisting slash knotting function and the cover operation. And so what we're doing is looking for that claim construction. But Mr. Starr, if I were a person of skill in this art, wouldn't I read this, see the functions that are being performed, see that two of these arms are performing two functions, not just one, and wouldn't I rather intuitively be able to say, well, I could combine two of these arms on one end into one, or I could combine two of these arms on the other end into one. This is pretty interchangeable technology. Why wouldn't one of skill in the art see that this is a technology that allows that kind of flexibility? And then they'd read the claim and they'd say, you know, the A does mean more than one. There's nowhere where it says each arm, of which there are only four, performs a separate function. Therefore, really, you can map the two elements onto one arm. I think somebody of skill in the art could have seen where you could perform more than one function using a single arm. And that, in fact, ultimately is what my... So don't we have to start over? No, we don't. There are at least factual issues here as to what is going on, right? No, I don't believe so, Your Honor. I disagree strongly. I'm looking for a claim construction that is true to both the plain and ordinary language of the claims and the sole embodiment in the specification. Exactly. That's your problem, is you've got to read the whole thing, not just... So you read it all together, doesn't it give you a clear image of these arms working together to perform the functions? Correct. And they can be combined into different elements to do that. And if they would have drafted the claims to reflect that concept... But they didn't draft the whole patent to reflect that concept. That's the point. They did not. Nowhere do they disclose, Your Honor, in the specification or the claims, I respectfully suggest, that a single arm, by itself, can perform more than one function... Well, looking at Figure 7, I mean, it's clear that we have two arms that each perform two different functions. And that is the knotting and the cover elements. Two arms together perform those two functions, yes, Your Honor. And I would suggest that if one of ordinary skill in the art would have envisioned such a machine, where a single arm could perform... Well, I look at Figure 7 and I think the two middle arms each perform two sections. Well, the specification, my reading of it, Your Honor, respectfully, is that they don't each, that they are both required, and I refer to them again as a pair of mating arms. Since they did it in those two middle ones, why wouldn't one of skill in the art say, you know what, they could have just as easily combined the first and the second arm so they could cut and twist at the same time. Yes, again, I think they could have. And had Accent chosen claim language when they amended the claims to overcome the prior art, had they chosen claim language that said something to the effect of an operator body being operably coupled with a gripper, knotter, cutting element, and cover, then I probably wouldn't be here making this argument. I'm looking for a claim construction that is true to the plain language of the claims, and that's where I believe Judge Hughes was correct in saying that if you look at the claims, a plain and ordinary reading of the claim language says that there are... But we don't do that. We read the whole patent all together. Even better. And that includes the preferred embodiment, which has two arms performing two functions. So when he says flat out, each arm performs one function, he's flat out wrong. I believe his statement that an ordinary reading of the claim language... Well, let's assume we disagree with your construction of the preferred embodiment in all this discussion that's been going on this morning. You have some cases for us where we've actually construed a claim to omit the preferred embodiment. Yes, I do. I'll give you one example. And the example I'll give is actually, I think, appropriate in this case, where the claims were not drafted, submitted to the patent office, and then came through unscathed. The case I'm going to talk about is a case where there were prior art rejections. The patentee had the ability and a decision to make about he or she was going to define structurally the claim and use specific words and phrases such as each and a respective one. In North American Container, for example, B. Plastipak, 415 F. 3rd, 1335, it's a 2005 case. The court stated that the fact that claims do not cover certain embodiments is compelled when narrowing amendments are made in order to gain allowance over prior art. And that is one example. I think it does happen. I've seen it happen. I don't believe this is a case where they amended the claims to exclude any embodiment. But I do believe it happens, that you can go in there with a disclosure, a written description, and over the course of time, over multiple rejections... Now that's rightly or wrongly, that's hypothetical. That's not this case, right? I think it tracks with... How do you deal with the Gillette case, where it was a group of... and then they identified a first, second, and third blade, and of course the accused had four blades. And they had just made two second blades, which is pretty close to what's happening here, isn't it? You've got two elements mapping onto one. Yeah, and I think if the Gillette claim language would have tracked the claim language that we're forced to deal with, each of the respective one, then the outcome might have been different. But yes, what they're arguing is that it is possible... That was a group of first, second, and third blades. And what they had done is make two second blades. That's pretty close to this, isn't it? Well, again, I don't have Gillette in front of me. I don't believe in Gillette they used the claim language that we're using here. Not identical? Of course not. And I believe to give this claim language and the specification meaning, our proposal is that there need to be at least four arms that correspond in some manner to the four functions that they chose to claim. Do you agree that if we were to find that the forced construction of the four arms, if that reads out, you prefer to bottom up or you must reverse? No. If you decline to... No, I don't. Again, I believe there's two ways to go here. The first is to realize that our proposed construction is true to the claim language and is true to the sole embodiment in the specification. If you disagree with that and you say what Mr. Starr is asking us to do is exclude arguably the only embodiment in the specification, I would say there is case law that states that when claims are amended and a patentee chooses very specific language to define the structure of his claim, then that is not the accused infringer's fault. Thank you, Mr. Starr. Thank you, Your Honor. Let's hear from Mr. Johnson. Judge Rainey, you had asked where in the record we had requested additional discovery. That's specifically at A147 of the record, which is a motion to relieve the parties of some confidentiality designations, and also specifically at A155, A156 of that motion we talked about and asked for additional discovery, specifically information regarding the parties who were accused, who had purchased products, and also we wanted a 30B6 deposition, which was not allowed. The court denied that request for additional discovery at A17 of the record, just six days after we had requested additional discovery without even requiring a response from the defendants in that case. We also moved for additional discovery pursuant to Rule 56F,  where we asked for that additional discovery in responding to their motion for summary judgment. With respect to the issue of the 877 patent, I think the court hit right on the point that you have to look to the specification to decide what these terms mean, and it's clear from the specification that the elongated operator bodies can interact with one or more of the cutter, the nodder, the gripper, and the cutter. If the court has no further questions, I can cede the rest of my time. Thank you, Mr. Cotemar.